IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOAN HAYNES and TROY WAYNE
HAYNES,

       Plaintiffs,

v.

MCCALLA RAYMER, LLC, et al.,

       Defendants.

CIVIL ACTION NO.
1:11-CV-3149-TWT-LTW

## MAGISTRATE JUDGE'S FINAL ORDER AND REPORT AND RECOMMENDATION

This case is presently before the Court on Bank of America, N.A. ("BOA")[1] and

Mortgage Electronic Registration Systems' ("MERS") Motion for Summary Judgment

(Doc. 78), McCalla Raymer, LLC's Motion for Summary Judgment (Doc. 80), Plaintiff

Joan and Troy Haynes' ("Plaintiffs") Cross-Motion for Summary Judgment (Doc. 86),

---

[1] BAC Home Loans Servicing, LP merged with Bank of America, N.A. on July 1, 2011, and Bank of America is therefore the successor in interest. Accordingly, BOA has moved for summary judgment as to Plaintiffs' claims against its predecessor in interest, BAC Home Loans Servicing, LP. Plaintiffs state in their Proposed Third Amended Complaint that as of July 1, 2011, BAC Home Loans Servicing, LP is Bank of America. (Proposed Third Am. Compl. ¶ 3). Additionally, throughout Plaintiffs' brief in support of their cross-motion for summary judgment, Plaintiffs refer to Bank of America as a Defendant. Additionally, although BOA and MERS jointly filed for summary judgment, no claims against MERS survived BOA and MERS' Motion to Dismiss.

and Plaintiffs' First Motion to Amend Complaint and Add Party (Doc. 85). For the reasons explained below, this Court **RECOMMENDS** that Defendants' Motions for Summary Judgment be **GRANTED** (Docs. 78, 80) and Plaintiffs' Motion for Summary Judgment should be **DENIED** (Doc. 86). Plaintiffs' First Motion to Amend Complaint and Add Party is **DENIED** (Doc. 85).

**PLAINTIFFS' MOTION TO AMEND**

## I.   **Procedural Background**

Plaintiffs filed this lawsuit on September 6, 2011, in the Superior Court of Henry County for claims arising out of Defendant BAC Home Loan Servicing, Inc.'s foreclosure of their residence on September 7, 2010. In their Complaint, Plaintiffs alleged wrongful foreclosure, violations of the Real Estate Settlement Procedures Act, 15 U.S.C. § 2605(f) ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("the FDCPA"). Defendants McCalla Raymer, LLC ("McCalla Raymer"), C. Troy Crouse ("Crouse"), Thomas Sears ("Sears"), Prommis Solutions, LLC ("Prommis"), and Debbie Foushee ("Foushee") removed the case to this Court on September 16, 2011, and moved to dismiss. (Docs.1, 9, 10, 11).

Plaintiffs responded by filing an Amended Complaint adding additional claims and facts as a matter of right on October 25, 2011. ( Doc. 12). In all, Plaintiffs' Amended Complaint included eight counts, including claims for wrongful foreclosure, fraud, civil conspiracy, as well as claims pursuant to RESPA, the FDCPA, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 <u>et. seq.</u>

Specifically, in Count I of their Amended Complaint, Plaintiffs argued the June 15, 2010 Assignment of their Security Deed from MERS to BAC Home Loan Servicing, LP was ineffective because Debbie Foushee, who notarized the Assignment, did not include her notary seal on the document and her notary commission did not begin until August 6, 2010. (Am. Compl. ¶¶ 15-19). Plaintiffs also alleged that the Assignment was invalid because it was not attested by two unofficial witnesses and the signatures of C. Troy Crouse and Thomas Sears, who executed the Assignment on behalf of MERS, were fraudulent and unverified. (Am. Compl. ¶ 22). Plaintiffs contend that as a result, the foreclosure sale which took place on September 7, 2010, was invalid and wrongful. (Am. Compl. ¶¶ 30-32). In Count V, Plaintiffs alleged that unspecified Defendants violated the FDCPA when BAC misrepresented itself as the party with legal authority to collect the debt secured by Plaintiffs' Deed even though BAC did not have legal authority to do so. (Am. Compl. ¶¶ 53-54). On August 14, 2012, the District Court adopted this Court's Report and Recommendation, recommending that Defendants Prommis Solution, LLC, McCalla Raymer LLC, C. Troy Crouse, Thomas Sears, MERS, and Debbie Foushee be dismissed. All claims against BOA were dismissed except Plaintiffs' wrongful foreclosure claim. Plaintiffs, however, were given one opportunity to amend their Complaint in order to more plausibly state their FDCPA claims by adding sufficient facts showing that McCalla Raymer and BAC were debt collectors as defined by the FDCPA.

In response to this Court's Order, Plaintiffs amended their Complaint a second

AO 72A
(Rev.8/82)

time on August 24, 2012.  (Doc. 34).  In the Second Amended Complaint ("SAC"), Plaintiffs pled additional facts they believed to be relevant to their wrongful foreclosure claim.  Plaintiffs' theory in the SAC was that BAC did not have a valid interest in the property due to the alleged defects in the Assignment from MERS to BAC.  (Id.). Specifically, Plaintiffs assert that the Assignment was defective because Debbie Foushee executed the Assignment as a notary public, but her signature was not accompanied by an official notary seal and she was not a notary at the time of execution.  (SAC ¶¶ 19-21).  Plaintiffs further assert that the Assignment lacked the signature of two unofficial witnesses because the signatures of Troy Crouse and Thomas Sears were fraudulent. (SAC ¶ 23).  Plaintiffs contend that BAC lacked standing to foreclose because BAC was not the owner of the loan and that Federal National Mortgage Association ("Fannie Mae") owned the loan since Fannie Mae had an unrecorded interest in the Deed.  (SAC ¶ 32).  Plaintiffs also allege they were not provided with notice of Fannie Mae's ownership in the Notice of Sale in violation of O.C.G.A. § 44-14-162.  (Id.).  In Count II of Plaintiffs' SAC, Plaintiffs assert that Defendants violated 15 U.S.C. § 1692f(6)(a) of the FDCPA because Defendants threatened and took actions to dispossess Plaintiffs from their property when BAC did not have a valid interest in Plaintiffs' property. Plaintiffs theorize that BAC's interest was not valid because "Fannie Mae was the silent creditor of the Property."  (SAC ¶ 36).  Plaintiffs also pled additional facts regarding McCalla Raymer and BAC's status as debt collectors.  (SAC ¶¶ 37-38).

Defendant McCalla Raymer moved to dismiss claims asserted against it in the

4

SAC on the grounds that Plaintiffs still failed to allege sufficient facts showing that it was a debt collector. (Doc. 39). Both remaining Defendants also filed Answers to Plaintiffs' SAC. Discovery was set to close on February 7, 2013, but was extended multiple times and ultimately expired on August 8, 2013. (Docs. 58, 74). This Court recommended that McCalla Raymer's motion be denied and the recommendation was adopted by the District Court. (Docs. 59, 62).

Defendants BOA and MERS moved for summary judgment on September 6, 2013. BOA and MERS argue in their Motion that Plaintiffs' wrongful foreclosure claim fails because (1) under recent cases decided by the Georgia Court of Appeals, Plaintiffs lack standing to challenge the Assignment and the filing of an assignment of a security deed was sufficient to provide BOA with standing to conduct the non-judicial foreclosure; (2) it is undisputed that Plaintiffs failed to make their loan payments; and (3) Plaintiffs failed to tender the amounts due under the loan to BOA. Defendants BOA and MERS further argue that Plaintiffs' FDCPA claims fail because BOA cannot be liable for FDCPA violations by McCalla Raymer and because BOA is not a debt collector as defined by the FDCPA.

Defendant McCalla Raymer also argues it is entitled to summary judgment as to Plaintiffs' FDCPA claims pursuant to Section 1692f(6)(A) because given that it sent its last Notice of Foreclosure Sale to Plaintiffs on July 24, 2010, and Plaintiffs' action was filed more than one year later, Plaintiffs' FDCPA claims are barred by the statute of limitations. McCalla Raymer further contends that to the extent that Plaintiffs' FDCPA

AO 72A
(Rev.8/82)

claims are predicated on defects within the Assignment, Plaintiffs' claims fail because the Assignment was valid and recorded on August 30, 2010, prior to the foreclosure sale, and Plaintiffs lack authority to challenge the sufficiency of the Assignment.

Instead of filing a brief in opposition to Defendants' Motions, Plaintiffs moved to Amend their Complaint for a third time on September 27, 2013, adding several new claims. This time, Plaintiffs sought to add Fannie Mae and MERS as Defendants and a breach of contract claim against BOA, Fannie Mae, and McCalla Raymer on the grounds that they did not send the required notice under paragraph 22 of the Security Deed before accelerating the debt as well new legal theories in support of Plaintiffs' wrongful foreclosure claim. Specifically, in Plaintiffs' Proposed Third Amended Complaint, Plaintiffs make the following claims. Count I alleges wrongful foreclosure. Plaintiffs set forth three separate theories why the foreclosure of their home was wrongful, two of which were not asserted in Plaintiffs' SAC. First, Plaintiffs contend for the first time that unspecified Defendants wrongfully foreclosed on their property because they failed to provide proper notice of the identity of the entity with the full authority to modify the terms of the mortgage under O.C.G.A. § 44-14-162.2. In support, Plaintiffs allege that the July 24, 2010 Notice of Foreclosure Sale indicated that BANA was the entity with the full authority to modify all terms of the mortgage, yet Plaintiffs, from the outset of their hardship were directed to furnish regular monthly mortgage payments to D&E Group which is an agent of Fannie Mae. Plaintiffs additionally assert that they were told by BOA and D&E that Fannie Mae was the owner

6

of their loan and that Fannie Mae had the final authority.  As a result, Plaintiffs were in direct contact with Fannie Mae, to obtain a loan modification and also sent loan modification paperwork to Prommis Solutions, LLC, who was McCalla's agent. Plaintiffs further assert that Fannie Mae's own servicing guidelines provide that its prior approval is required to modify mortgage loans in "an MBS pool."  Plaintiffs contend that they were confused and, as a result, they did not take advantage of options for foreclosure prevention, causing them damages.  Plaintiffs also contend that they should be awarded damages for mental distress.  (Proposed Third Am. Compl. ¶¶ 32-39).

Second, Plaintiffs allege the foreclosure was wrongful because the Assignment was not recordable under Georgia law because Debbie Foushee signed the document as a notary but she was not a notary at the time she witnessed the Assignment, the Assignment was not executed by a proper official witness and the signatures on behalf of MERS were forged, and unspecified Defendants did not exercise the power of sale fairly because they sent a Notice of Foreclosure and advertised the foreclosure sale even though BOA and McCalla did not have the present right to the Property due to the defects in the Assignment.  (Proposed Third Am. Compl. ¶¶ 40-41, 45-47).  Third, Plaintiffs again argue for the first time that BOA failed to exercise the power of sale in good faith because they sent a Notice of Foreclosure Sale when they had not yet recorded the Assignment and therefore they did not have the right to effectuate the power of sale in the Security Deed.  (Proposed Third Am. Compl. ¶¶ 50-55).

In Count II for breach of contract, Plaintiffs argue for the first time that BOA,

Fannie Mae, and McCalla Raymer breached paragraph twenty-two of the Security Deed because they accelerated the debt without providing Plaintiffs with notice specifying the default, the action needed to cure the default, that they had thirty days to cure the default, and the consequences of the failure to cure the default on the date specified in the notice.  Plaintiffs allege BOA, Fannie Mae, and McCalla Raymer never sent the notice. (Proposed Third Am. Compl. ¶¶ 56-60).  Finally, in Count III, Plaintiffs contend that Defendant McCalla Raymer violated Section 1692f(6)(A) of the FDCPA when it threatened to foreclose on property to which it had no right due to the aforementioned alleged defects in the Assignment.  (Proposed Third Am. Compl. ¶¶ 65-68).

Plaintiffs' also contend that they are asserting new claims at this stage of the litigation because "new facts came to light through discovery."  Additionally, Plaintiffs argue Fannie Mae is a necessary party because Fannie Mae claims ownership of their property and has the full authority to grant relief.

Defendants BOA and McCalla Raymer both oppose Plaintiffs' Motion to Amend, and argue Plaintiffs have unduly delayed filing their motion and do not proffer any viable explanation for why they waited to request to amend their Complaint well after the close of discovery and the filing of Defendants' summary judgment motions. Defendants contend that the delayed filing was unjustified because Plaintiffs were aware of the facts and circumstances regarding Fannie Mae's alleged involvement with respect to their mortgage loan at the time Plaintiffs filed their original Complaint.  Defendants also argue any further amendment to add a party would be futile and prejudicial to them.

8

## II.   <u>Legal Analysis</u>

This Court finds that Plaintiffs should not be permitted to amend their Complaint. Pursuant to the Federal Rules of Civil Procedure, leave to amend a party's pleading shall be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The court has discretion to make this determination, but it must provide a substantial reason for such a denial because "Rule 15(a) severely restricts the district court's freedom."  <u>Shipner v. E. Air Lines</u>, 868 F.2d 401, 407 (11th Cir. 1989) (policy embodied in Federal Rules of Civil Procedure favors liberality of amendments).  However, both the Supreme Court and the Eleventh Circuit have enumerated factors which allow the denial of a motion to amend.  These factors include undue prejudice to the opposing party, undue delay, bad faith on the part of the movant, futility of the motion, or repeated failure to cure deficiencies by previous amendments.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape</u>, 556 F.3d 1232, 1241 (11th Cir. 2009); <u>Fincher v. Georgia-Pacific, LLC</u>, No. 1:08-CV-3839-JOF, 2009 WL 2601322, at *1 (N.D. Ga. Aug. 24, 2009) ("In order to amend a complaint to add additional parties after a responsive pleading has been filed, a plaintiff must satisfy both the requirements of Rule 15(a) and demonstrate compliance with one of the other rules governing the addition of parties, such as Rules 19, 20, or 21.")  "An amendment adding a cause of action is considered futile if the new cause of action does not state a claim upon which relief can be granted," would otherwise be subject to dismissal, or if the amendment would be immediately subject to summary judgment for defendant. <u>Spanish</u>

9

Broad. Sys. of Fla., Inc. v. Clear Channel Commnc'ns, Inc., 376 F.3d 1065, 1077 (11th Cir. 2004); Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 n.10 (11th Cir. 2000); see also McLaughlin v. Pasco Cnty. Sheriff's Office, 510 F. App'x 880, 883 (11th Cir. 2013), citing Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

## A.    **Undue Delay**

Defendants contend that Plaintiffs' have unduly delayed their request to amend their Complaint because they filed their request more than two years after their lawsuit was filed even though they were aware of the facts and circumstances supporting their additional new claims since 2010.  In support, Defendants argue that because Plaintiff Joan Haynes admits to being in contact with proposed Defendant Fannie Mae prior to the foreclosure of her property on September 7, 2010, she was aware of issues and complaints she had concerning the loan modification process prior to foreclosure and immediately thereafter, but did not make these claims against Fannie Mae or the Bank Defendants at that time.  Plaintiffs seek to avoid this conclusion by arguing that the delay was excusable because they released their current counsel between March 13, and July 10, 2013, during the discovery period and because Plaintiffs' counsel only discovered facts supporting Plaintiffs' new claims at the later date when counsel responded to Defendants' discovery requests and obtained documents Plaintiffs did not initially provide to counsel.

Neither excuses the delay in this case, because as noted above, the information necessary to assert the new claims were available to Plaintiffs at the inception of their

AO 72A
(Rev.8/82)

lawsuit.  The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of plaintiffs, does not justify denying the plaintiffs' opportunity to amend their complaint.  Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1186 (11th Cir. 2013); Burns v. Winnebago Indus., 492 F. App'x 44, 46-47 (11th Cir. 2012).  Prejudice, however, is especially likely to exist if the amendment involves new theories of recovery or requires additional discovery.  Tampa Bay Water, 731 F.3d at 1186 (finding prejudice because amendment offered new claims after the close of discovery and the defendant would be required to investigate the facts and prepare to defend against the new claims requiring additional discovery and further delay before trial).  A district court may find undue delay when the movant knew of facts supporting a new claim long before the movant requested leave to amend, and amendment would further delay the proceedings.  Tampa Bay Water, 731 F.3d at1186. Where the plaintiff had enough information to state such new claims well before the end of the discovery period, the district court does not abuse its discretion by finding undue delay when the plaintiff sought approval for the amendment after the close of the discovery period. Tampa Bay Water, 731 F.3d at 1187.

In this case, Plaintiffs' unduly delayed their request to amend their Complaint and to allow Plaintiffs to amend at this late stage in the proceedings would unduly prejudice Defendants.  Each of Plaintiffs' new claims could have been asserted prior to the close of discovery, if not at the inception of the lawsuit.  Plaintiffs fail to explain why they could not have previously brought their new claim that unspecified Defendants

wrongfully foreclosed on their property by omitting to provide proper notice of the identity of the entity with the full authority to modify the terms of the mortgage under O.C.G.A. § 44-14-162.2. All of the facts necessary to bring the claim were available before Plaintiffs initially filed their lawsuit. Plaintiffs were on notice that Defendants indicated BOA was the party with full authority to modify the mortgage by at the latest, September 2010. The Notice of Foreclosure Sale, dated July 24, 2010, indicates that the entity with full authority to negotiate, amend, and modify all terms of the mortgage was BOA, and Plaintiff Joan Haynes admits to having received the Notice of Foreclosure Sale "about July or August" in 2010. (Doc. 86-7, p. 5-6; J. Dep. of Joan Haynes, hereinafter "J. Haynes Dep.," 94; McCalla Raymer's Statement of Undisputed Material Facts ¶ 6; Pl.'s Resp. to McCalla Raymer's Statement of Undisputed Material Facts ¶ 6). Additionally, Plaintiffs knew of their own confusion about the party who had the authority to modify the terms of the mortgage also by 2010 when they were negotiating with various parties to modify their note. Although Plaintiffs now argue the foreclosure notice was defective in that Fannie Mae was the only entity with full authority to negotiate the loan terms and/or it was confusing as to the actual entity who had authority to negotiate the loan terms, Plaintiffs admit in their Proposed Third Amended Complaint and testified that they were repeatedly told by BOA and D&E when they were experiencing financial difficulties that Fannie Mae was the owner of their loan and that Fannie Mae had final authority. (Proposed Third Am. Compl. ¶ 34; Ex. I and Doc 82, J. Haynes Dep. 97-98). Plaintiffs further state in their Proposed Third Amended

Complaint that they were in direct contact with Prommis, McCalla Raymer, and Fannie Mae to obtain a loan modification in 2010.  (Proposed Third Am. Compl. ¶ 35; Docs. 86-8, 86-9; <u>see also</u> J. Haynes Dep. 91-99).  Exhibits to Plaintiffs' Proposed Third Amended Complaint show that Plaintiffs also began mitigation counseling with D&E at least as early as May 2009.  (<u>See generally</u>, Docs. 85-6, 85-7).  Plaintiff Joan Haynes admits that she "felt Fannie Mae had the higher authority on her property," that both BOA and Fannie Mae indicated to her that they could help her modify her loan, and that as a result, she followed instructions from both of them.  (J. Haynes Dep. 96-97).  Plaintiff Joan Haynes further admitted that D&E made representations that they could help her with the modification, that D&E was dealing with Fannie Mae, and that Fannie Mae was the owner of the property.  (J. Haynes Dep. 98).  Thus, it appears that Plaintiffs had the facts necessary to state this claim in 2010.  Indeed, Plaintiff Joan Haynes testified that when she filed her lawsuit in September, 2011, she was aware of the facts and circumstances surrounding the loan modification and the issues with it.  (J. Haynes Dep. 41).

Similarly, before Plaintiffs filed their original Complaint, Plaintiffs had all the facts necessary to support their claim that BOA failed to exercise the power of sale in good faith when BOA sent a Notice of Foreclosure Sale before recording the Assignment.  (Proposed Third Am. Compl. ¶¶ 50-55).  Plaintiffs had access to both the Assignment (recorded August 30, 2010) and the Notice of Foreclosure Sale (dated July 23, 2010) when they filed their original suit, as they argued that defects existed in the

13

Assignment at that time and attached both the Assignment and the Notice of Foreclosure Sale to their original Complaint.  (Compl. ¶¶ 12-14, 16-29, Exs. A, B).

Likewise, Plaintiffs, prior to filing their original Complaint, already had the facts they needed to support their argument in Count II for breach of contract that Defendants breached the Security Deed by accelerating the debt without providing prior notice. Plaintiffs, themselves, executed the Security Deed and therefore, would have had access to its provisions. (Compl. ¶ 10).  It is also apparent that acceleration of the debt occurred prior to September 7, 2010, the date of the foreclosure sale.  (Compl. ¶ 17).  Plaintiffs, therefore, fail to present reasonable justification as to why they waited until September 27, 2013, after summary judgment was filed, after the close of discovery, and more than two years after they filed their original Complaint, to request an amendment to add the aforementioned claims.   For the same reasons, Plaintiffs could have included the new proposed claims in their earlier amendments.

Furthermore, this Court agrees with Defendants that Plaintiffs' delay in filing these claims was prejudicial to Defendants.  Discovery has been completed, and if Defendants' had known about Plaintiffs' new claims, Defendants could have directed their discovery efforts to each of the aforementioned claims.  Additionally, Defendants have already filed their summary judgment motions, incurring expense on behalf of their client.  Moreover, if the Court were to permit claims against additional defendants, the case would be further delayed because the new defendants and possibly the existing Defendants would likely require discovery on the new claims. While Plaintiffs indicate

AO 72A
(Rev.8/82)

that they do not require further discovery against the existing named Defendants, Plaintiffs do not deny that they may need discovery against the additional proposed Defendants and admit that Fannie Mae "may go through additional scrutiny." (Doc. 91, p. 7). If Plaintiffs had acted sooner to amend their Complaint, such discovery could have occurred during the discovery period, thus avoiding costly duplication of discovery efforts and further delay.

Plaintiffs again seek to avoid denial of their request to amend by asserting that, with the exception of their breach of contract action, they had previously included the aforementioned claims in their SAC. In support, Plaintiffs cite Paragraph 32 of their SAC. Therein, Plaintiffs state within their Wrongful Foreclosure Count that "BAC lacked standing because they were not even the owner of the loan," that "Fannie Mae is owner of the loan," but "Plaintiffs were not provided with notice in the Notice of Sale." (SAC ¶ 32). This Court concludes that Plaintiffs' former claims are altogether different from Plaintiffs' new claims. Plaintiffs' assertion in their Proposed Third Amended Complaint that unspecified Defendants wrongfully foreclosed on their property because Defendants failed to provide proper notice of the identity of the entity with the full authority to modify the terms of the mortgage in violation of O.C.G.A. § 44-14-162.2 on its face, appears to be similar to their former claim, but upon closer examination, it is apparent that these claims are very different claims. Being an "owner of a loan" and being an entity with the full authority to modify the terms of a mortgage under O.C.G.A. § 44-14-162.2 mean two separate things. Under Georgia law, a notice

15

of foreclosure "shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 44-14-162.2(a). "[T]he statute does not require that notice letters must identify the security creditor." Carr v. U.S. Bank, NA, 534 F. App'x 878, 881 (11th Cir. 2013); You v. JP Morgan Chase Bank, N.A., 293 Ga. 67, 74-75 (2013). "The only entity that [has] to be identified in the Notice [is] the one with the full authority to negotiate, amend, or modify the terms of the loan, and that could be the deed holder, note holder, attorney, or servicing agent." Harris v. Chase Home Fin., LLC, 524 F. App'x 590, 593 (11th Cir. 2013); You, 293 Ga. at 74-75. Thus, the manner in which Plaintiffs formerly pled their claim in their SAC did not state a viable cause of action.

Plaintiffs' new claim in their Proposed Third Amended Complaint, is that the notice was deficient not because it failed to identify the owner of the loan, but rather because the notice failed to identify the entity with the full authority to modify the terms of the mortgage under O.C.G.A. § 44-14-162.2, a separate and legally viable theory requiring wholly different facts to support it. You, 293 Ga. at 74-75. Indeed, in Plaintiffs' Third Amended Complaint, Plaintiff plead new facts in support of their claim. Plaintiffs now contend that the July 24, 2010 Notice of Foreclosure Sale indicated that BOA was the entity with the full authority to modify all terms of the mortgage, yet Plaintiffs aver that from the outset of their hardship, they were directed to furnish regular monthly mortgage payments to the D&E Group which is an agent of Fannie

Mae.  Plaintiffs also assert that they were told by BOA and D&E that Fannie Mae was the owner of their loan and that Fannie Mae had the final authority.  As a result, Plaintiffs were in direct contact with Fannie Mae, to obtain a loan modification and also sent loan modification paperwork to Prommis Solutions, LLC, who was McCalla's agent.  Plaintiffs further point out that Fannie Mae's own servicing guidelines provide that Fannie Mae's prior approval is required to modify mortgage loans in "an MBS pool."  (Proposed Third Am. Compl. ¶¶ 32-39).  Thus, this Court cannot agree with Plaintiffs that they previously asserted the same claims in their SAC.

## B.   Necessary Party

Plaintiffs contend that they should be permitted to add Fannie Mae as an additional party under Rule 19 because Fannie Mae is a necessary party.  Under Rule 19(a), necessary parties include:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)   as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Here, Plaintiffs do not argue Fannie Mae's interest will be

17

harmed if the litigation were to proceed in its absence or that Fannie Mae's interests cannot be adequately protected by the existing parties.  Instead, Plaintiffs argue Fannie Mae is a necessary party integral to Plaintiffs' *own* interests under Rule 19(1)(a)(A). Where the district court could provide complete relief among the existing litigants without adding additional parties, the additional parties are not necessary parties for purposes of Rule 19(a)(1)(A).  Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1039-40 (11th Cir. 2014).  Plaintiffs do not explain why, in Fannie Mae's absence, that they cannot be afforded complete relief from the existing Defendants. Instead, Plaintiffs contend that the Notice of Sale should have disclosed Fannie Mae's interest in the loan under O.C.G.A. § 44-14-162.2 because Fannie Mae may have been a party who had full authority to amend or modify Plaintiffs' loan.  Plaintiffs also argue Fannie Mae is a "party of interest with the full ability to grant relief."  Thus, based on Plaintiffs' argument, it appears that Fannie Mae is at best, merely an additional party from whom Plaintiffs could obtain relief.  Accordingly, Plaintiffs have failed to demonstrate that Fannie Mae's presence in the litigation is required.

**C.**   **Timeliness**

Plaintiffs seek to avoid denial of their motion to amend by arguing that McCalla Raymer's opposition to their Proposed Third Amended Complaint should not be considered because McCalla Raymer filed it one day late.  Under the local rules of this Court, however, McCalla Raymer's opposition brief was timely filed.  Local Rule 7.1B provides that any party opposing a motion shall serve the response within fourteen days

after service fo the Motion.  As Plaintiffs acknowledge, Rule 6.1 of the Federal Rules of Civil Procedure provides that three days are added to the deadline for electronic service.  Fed. R. Civ. P. 5(b), 6.1.  In this case, however, the seventeenth day after electronic service of the Motion occurred on October 14, 2013, Columbus Day, which is a legal holiday.  Fed. R. Civ. P. 6(a)(6).  Thus, the time for service was extended through and including October 15, 2013.  Fed. R. Civ. P. 6(a)(1)(C), 6(a)(6)(A).  Therefore, McCalla Raymer's response, filed on October 15, 2013, was timely.  (Doc. 90).  Because Plaintiffs unduly delayed filing their Motion and prejudiced Defendants, Plaintiffs' Motion to Amend is **DENIED**.  (Doc. 85).

## <u>DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT</u>

Defendants BOA and MERS moved for summary judgment on September 6, 2013.  BOA and MERS argue in their Motion that Plaintiffs' wrongful foreclosure claim fails because (1) under recent cases decided by the Georgia Court of Appeals, Plaintiffs lack standing to challenge the Assignment and that the filing of an assignment of a security deed is enough to provide BOA with standing to bring a non-judicial foreclosure; (2) it is undisputed that Plaintiffs failed make their loan payments; and (3) Plaintiffs have failed to tender the amounts due under the loan to BOA.  In addition, BOA and MERS contend that Plaintiffs' FDCPA claims fail because BOA cannot be liable for FDCPA violations by McCalla Raymer and because BOA is not a debt collector as defined by the FDCPA.

McCalla Raymer argues that it is entitled to summary judgment as to Plaintiffs' claims pursuant to Section 1692f(6)(A) because given that it sent its last Notice of Foreclosure Sale to Plaintiffs on July 24, 2010, and Plaintiffs' action was filed more than one year later, Plaintiffs' FDCPA claims are barred by the statute of limitations. McCalla Raymer further contends that to the extent that Plaintiffs' FDCPA claims are predicated on defects within the Assignment, Plaintiffs' claims fail because the Assignment was valid and recorded on August 30, 2010, prior to the foreclosure sale, and Plaintiffs do not have standing to challenge the sufficiency of the Assignment.

## I.   FACTUAL BACKGROUND[2]

On December 18, 2007, Plaintiff Joan Haynes obtained a $233,500 loan from Quicken Loans, Inc. for the purchase of real property in McDonough, Georgia.  (BOA DSMF ¶¶ 1-3, 4; BOA's Ex. B).  In connection with the loan transaction, Joan Hayes executed a Note and a Security Deed, which named MERS the Grantee as nominee for Quicken Loans.  (BOA DSMF ¶ 4).  Plaintiff Troy Haynes also executed the Security

---

[2] All facts taken directly from the BOA's Statement of Undisputed Material Facts (hereinafter "BOA DSMF") remain undisputed.  This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party. LR 56.1B(2), (3), NDGa.  Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment.  See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989).  Thus, this Court will not consider any fact (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion.

Deed.  (BOA DSMF ¶ 4).  Subsequently, BAC Home Loans Servicing, LP ("BAC")
began servicing the loan and Joan Haynes made her loan payments directly to BAC.
(BOA DSMF ¶ 50).  Joan Haynes was not in default at the time BAC began servicing
her loan.  (BOA DSMF ¶ 6).  In May 2009, Plaintiffs experienced financial difficulty
and ceased making regular payments and instead, began making partial payments of
$676.11.  (Pl.'s Ex. C, Doc. 86-4; J. Haynes Dep. 20-21).  Plaintiffs made these partial
payments until August 2010.  (J. Haynes Dep. 25-26).

On June 15, 2010, MERS executed an Assignment transferring the interests in the
Security Deed from MERS to BAC Home Loans Servicing, and the Assignment was
recorded on August 30, 2010.  (BOA's Ex. G, Doc. 79-7; DSMF ¶ 15).  The Assignment
was notarized by Debbie Foushee, but does not include a notary seal for her signature.[3]
(Doc. 86-10, p. 1).  Neither Plaintiff was a party to the Assignment of the Security Deed
from MERS to BAC.  (DSMF ¶ 9).

On July 16, 2010, BAC served Plaintiffs with a Notice of Default, due to Joan
Haynes' nonpayment.  (BOA DSMF ¶ 13).  On or around July 24, 2010, Defendant
McCalla Raymer sent Plaintiff Joan Haynes a Notice of Foreclosure Sale.  (BOA DSMF
¶ 14).  Therein, McCalla Raymer advised that the foreclosure sale was scheduled for the
first Tuesday in September 2010 and that Bank of America was the entity with full

---

[3] Plaintiff also presents what appears to be a website page for the Georgia
Superior Court Clerks' Cooperative Authority which includes an index of Georgia
Notaries indicating that Ms. Foushee was appointed on August 6, 2010.  (Doc. 86-10,
p. 2).

authority to negotiate, amend, and modify all terms of the mortgage with the debtor. (Id.). On September 7, 2010, BAC conducted a foreclosure sale of Joan Haynes' home. (J. Haynes Dep. 25-26; BOA DSMF ¶ 16).

## II.   LEGAL ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of asserting the basis for the motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990).  The movant is not required, however, to negate his opponent's claim; the movant may discharge his burden by merely "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating specific facts showing that there is a genuine disputed issue for trial; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like.  Id. at 324 (quoting Fed. R. Civ. P. 56(c)(1)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is material when it is identified as such by the controlling substantive law.  Id. at 248. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50.

### B.   **Plaintiffs' Wrongful Foreclosure Claim**

In Count I of Plaintiffs' SAC, Plaintiffs contend that BAC wrongfully foreclosed on their property.  Plaintiffs theorize that BAC did not have a valid interest in the property due to the alleged defects in the Assignment from MERS to BAC.  (Id.). Specifically, Plaintiffs assert that the Assignment was defective because Debbie Foushee executed the Assignment as a notary public, but her signature was not accompanied by an official notary seal and Foushee was not a notary at the time of execution (SAC ¶¶ 19-21).  Plaintiffs further assert that the Assignment lacked the signature of two official witnesses because the signatures of Troy Crouse and Thomas Sears were fraudulent. Plaintiffs also argue BAC lacked standing to foreclose and the actual owner of the

23

Security Deed was Fannie Mae, which held the Security Deed prior to the Assignment through an unrecorded assignment. (SAC ¶¶ 17, 32-36). Plaintiffs further contend that they were not provided with notice of Fannie Mae's ownership in the Notice of Sale in violation of O.C.G.A. § 44-14-162.

BOA and MERS argue in their Motion that Plaintiffs' wrongful foreclosure claim fails because under new case law recently decided by the Georgia Court of Appeals, Plaintiffs lack standing to challenge the Assignment and that the filing of an assignment of a security deed is enough to provide BOA with standing to bring a non-judicial foreclosure. While Plaintiffs do not respond directly to BOA's Motion, Plaintiffs argue in their own Cross-Motion for Summary Judgment that they have standing to challenge the Assignment because the recent Georgia case law only applies when defects within an assignment are latent. Plaintiffs allege that while the Assignment includes latent defects in that the signatures of Crouse and Sears were forged, the Assignment also includes patent defects because Ms. Foushee's improper execution and/or notarization of the Assignment was discernable from the face of the Assignment. Plaintiffs argue that as a result, the Assignment was not recordable, should not have been recorded, and is not enforceable against third parties or subsequent purchasers for value. Plaintiffs further argue that due to this recording failure, BOA also violated O.C.G.A. § 44-14-162(b), which requires that the assignment vesting the secured creditor with title to the security instrument shall be *filed* in the office of the clerk of the superior court of the county in which the real property is located prior to the time of the foreclosure sale.

24

1.   <u>Plaintiffs' Arguments that the Foreclosure Was Wrongful Because</u> <u>the Assignment from MERS to BAC Was Defective Fail as a Matter</u> <u>of Law</u>

Plaintiffs' argument that the Assignment from MERS to BAC was defective on its face because it was not properly attested by a notary public finds support in Georgia case law.  Under Georgia law, all transfers or assignments of a deed to secure debt shall be in writing, shall be signed by the grantee, or if the deed has been previously transferred, by the last transferee, and shall be witnessed as required for deeds. O.C.G.A. § 44-14-64; <u>In re Cummings</u>, 173 B.R. 959, 962 (Bankr. N.D. Ga. 1994); 2 Ga. Real Estate Law & Procedure § 21-45 (6th ed. 2011); <u>compare</u> 2 Ga. Real Estate Law & Procedure § 21-15 (6th ed. 2011) (noting that execution of a security deed must meet all the standards of validity applicable to deeds generally, in that it must include the name of the grantor and grantee, sufficient words of conveyance or grant, a valid description of the property conveyed, proper execution and attestation, and an affective delivery).  Georgia law requires that in order for a security deed for real property to be in recordable form, it must be attested by an official witness and an unofficial witness. O.C.G.A. §§ 44-14-61, 44-14-33; <u>Wells Fargo Bank, N.A. v. Gordon</u>, 292 Ga. 474, (2013) (holding that because deed lacked signature of unofficial witness, it was not in recordable form as required by O.C.G.A. § 44-14-33 and did not provide constructive notice); <u>U.S. Bank Nat'l Ass'n v. Gordon</u>, 289 Ga. 12 (2011) (noting that O.C.G.A. § 44-14-33 requires that to admit a security deed encumbering real property to record, the deed must be attested by an officer, such as a notary public, and by a second witness).

Official witnesses who may attest the signatures on the deed include judges of a court of record, magistrates, notary publics, or clerks or deputy clerks of superior courts and city courts created by special Acts of the General Assembly.  O.C.G.A. § 44-2-15; U.S. Bank, 289 Ga. at 15 (explaining that O.C.G.A. § 44-2-15 provides the list of officers who are authorized to attest a mortgage or a deed); 2 Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure With Forms § 19.64 (7th ed. 2014) (concluding that for a deed to be recordable in the state of Georgia, it must be attested by two witnesses, one of whom is a notary or vested with notarial powers).

In this case, the Assignment on its face, is executed by both an official witness, Debbie Foushee acting as a Notary Public, and an unofficial witness.  While Foushee signed in the space reserved for notary publics, Foushee neither sealed her signature with a notary seal, nor indicated when her notary commission would expire.[4]  For a notary public to serve as the official witness, the notary must provide a seal of office. O.C.G.A. § 45-17-6(a)(1) ("An official notarial act must be documented by the notary's seal"); In re Rainwater, No. 08-71489-MGD, 2013 WL 5591924, at *1 (Bankr. N.D. Ga. Sept. 18, 2013);  Friedrich v. APAC-Georgia, Inc., 265 Ga. App. 769, 771 (2004) (notary's attestation on guaranty was invalid because notary's signature was not sealed); Hurt v. Norwest Mortg., Inc., 260 Ga. App. 651, 654 (2003) (concluding that affidavit

---

[4] Based on the evidence that Plaintiffs have presented, it appears possible that Foushee did not have had her notary commission at the time Crouse and Sears allegedly executed the Assignment on June 15, 2010.  (Doc. 99-3; Pl.'s Exs. Q, R, Doc. 86-10, pp. 1-2).

of indigence was not properly attested by notary who did not include her seal of attestation and therefore notary's attestation was invalid); 2 Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure With Forms § 19.70 (7th ed. 2014) (explaining that it is now clear that deeds must have the seal of the notary attached). Thus, due to the omission of the seal, the Assignment may not have been properly attested by an official witness and may have been ineligible for recording. Wells Fargo, 292 Ga. at 475; see also In re Kim, 571 F.3d 1342, 1346-47 (11th Cir. 2009); 2 Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure With Forms § 19.70 (7th ed. 2014). A deed that is not properly attested is ineligible for recording, is defective on its face, and does not provide constructive notice to hypothetical bona fide purchasers. Wells Fargo, 292 Ga. at 475-76; see also In re Codrington, 691 F.3d 1336, 1340 (11th Cir. 2012).

Nevertheless, despite any defects present in the Assignment, Plaintiffs' wrongful foreclosure claim still fails because Plaintiffs do not have standing to challenge defects within the Assignment. The Georgia Court of Appeals recently held in Montgomery v. Bank of Am., 321 Ga. App. 343 (2013), that a debtor who is not a party to an assignment does not have standing to challenge it because the assignment was a contract and the debtor was not a party to the contract. Id. at 346 (concluding that because the assignment of security deed was a contract between MERS and BAC, the debtor did not have standing to challenge the assignment even if it was flawed); see also Williams v. U.S. Bank Nat'l Ass'n, No. 1:12-CV-3943-TWT, 2013 WL 2285748, at *3 (N.D. Ga.

May 23, 2013); <u>Adams v. Mortg. Elec. Registration Sys., Inc.</u>, No. 1:11-CV-04263-RWS, 2012 WL 1319453, at *8 (N.D. Ga. Apr. 16, 2012) (denying leave to amend complaint to add wrongful foreclosure claim challenging corrective assignment as improper where plaintiff alleged that signors did not have authority to execute corrective assignment because plaintiff was not a party to the corrective assignment and had no standing to challenge its validity); <u>Bandele v. Deutsche Bank Nat'l Trust Co.</u>, No. 1:11-CV-4257-TWT, 2012 WL 1004990, at *2 (N.D. Ga. Mar. 22, 2012) (concluding that plaintiffs did not have standing to challenge the Assignment of the Security Deed because they were not a party to the Assignment); <u>Rosenhaft v. BAC Home Loans Servicing, LP</u>, No. 1:11-CV-2519-TWT, 2012 WL 484842, at *2 (N.D. Ga. Feb. 14, 2012); <u>Breus v. McGriff</u>, 202 Ga. App. 216, 216 (1991) ("[S]trangers to the assignment contract  . . . have no standing to challenge its validity.").

Plaintiffs argue within their own summary judgment motion that the holding in <u>Montgomery</u> does not apply to their case because <u>Montgomery</u> is limited to the circumstances where an assignment is challenged on the basis that signatures on behalf of the Assignor were fraudulent, a latent defect.  Plaintiffs contend that their case is distinguishable because unlike the plaintiff in <u>Montgomery</u>, they have also challenged the Assignment on the basis that it has a patent defect, in that the Assignment included no notary seal and no valid official witness, which made the Assignment unfit for recording.  In support, Plaintiffs cite <u>Leeds Building Products, Inc. v. Sears Mortgage Corp., et al.</u>, 267 Ga. 300 (1996).  In that case, plaintiffs were both the purchasers and

financier of a home purchased from a residential builder. <u>Leeds</u>, 267 Ga. at 300. The builders bought materials from a building supply company and executed a Security Deed in the building supply company's favor, which was recorded by the building supply company. <u>Leeds</u>, 267 Ga. at 300. The official witness, however, did not properly acknowledge the deeds because she never observed the representative for the builder execute the deeds and instead, placed her signature on the deeds after they were executed. <u>Leeds</u>, 267 Ga. at 300. Because a title search failed to disclose the existence of the security deeds, the security deeds were not satisfied when plaintiffs closed on their properties. <u>Leeds</u>, 267 Ga. at 300. The builder subsequently filed a Chapter 7 bankruptcy and the building supply company demanded satisfaction of the deeds from the plaintiffs. <u>Leeds</u>, 267 Ga. at 300-01. The plaintiffs sued, seeking damages for wrongful declaration of default and wrongful attempted foreclosure. <u>Id.</u> The Court of Appeals ruled that because the deeds were not properly attested or acknowledged, although recorded and regular on their face, they did not provide constructive notice and lost whatever priority they would have had over plaintiffs' title. <u>Id.</u> at 301. The Georgia Supreme Court reversed and concluded that a defectively acknowledged recorded deed, which shows no such defect on its face, provides constructive notice to all the world of its existence. <u>Id.</u> at 301. The Supreme Court further explained that when the deed shows a defect on its face, the circumstances are distinguishable because a facially invalid deed does not constitute constructive notice on future purchasers. <u>Id.</u> at 301. The issue in this case, however, does not involve whether a subsequent purchaser had

29

constructive notice of a prior deed.  Plaintiffs, here, are not purchasing the property subsequent to the Assignment of the interests in the Security Deed.  Cf. Duncan v. Ball, 172 Ga. App. 750, 751-52 (1984) (concluding that although a deed not executed in the manner prescribed by O.C.G.A. § 44-5-30 is not properly recordable and does not give constructive notice to all the world, it was not a nullity and it was valid as between the parties, neither of whom were bona fide purchasers).

Similarly, Plaintiffs cite In re Codrington, 430 B.R. 287 (Bankr. N.D. Ga. 2009) and In re Yearwood, 318 B.R. 227 (Bankr. N.D. Ga. 2004) to support their position that Assignments which are patently defective are not effective.  In both cases, however, the issue was whether a Chapter 7 bankruptcy trustee may avoid a creditor's interest in a security deed where the security deed was not executed by an official witness.  In those cases, unlike the instant case, the courts were required to apply the strong-arm power of 11 U.S.C. § 544(a)(3), which gives the bankruptcy trustee the same status as a bona fide purchaser and allows the bankruptcy trustee to avoid the transfer of debtor's property or any obligation incurred by the debtor that would be voidable by a bona fide purchaser of real property at the commencement of the case.  11 U.S.C. § 544(a)(3). Therefore, again, these authorities are distinguishable from the instant action because Plaintiffs in this case are not bona fide purchasers who purchased the property subsequent to the Assignment.  Thus, the aforementioned authorities are inapposite to this case and do not create a justification to depart from the precedent established in Montgomery that debtors, who were not a party to the assignment do not have standing

30

to challenge the assignment.  There is no language in the <u>Montgomery</u> decision to indicate that the result would be different depending on the type of defect within the assignment.

Moreover, the presence of patent defects in an assignment do not invalidate the assignment as between the parties to the assignment.  <u>Bramblett v. Bramblett</u>, 252 Ga. 21, 22 (1984); <u>Hooten v. Goldome Credit Corp.</u>, 224 Ga. App. 581, 582 (1997) ("Despite a statutory requirement that the signature of the maker of a deed must be attested by two witnesses, the requirement relates only to the recordability of the instrument, and a deed may be valid between the parties without attestation."); <u>Duncan v. Ball</u>, 172 Ga. App. 750, 752 (1984); <u>Moody v. Moody</u>, 241 Ga. 286 (1978) ("The fact that a deed is not recorded, and may not be recordable for lack of attestation does not render it invalid, nor inadmissible in evidence if the proper foundation is laid"); <u>Budget Charge Accounts, Inc. v. Peters</u>, 213 Ga. 17, 18 (1957) ("The allegation that the deed was improperly witnessed by an agent of the lender as notary public is insufficient to void the deed to secure debt, since a deed without attestation conveys the title as against the grantor and his heirs.").  Because Plaintiffs have no standing to challenge defects within the Assignment, Plaintiffs' theory that the foreclosure of their residence was wrongful due to defects within the Assignment fails as a matter of law.

31

2.    <u>O.C.G.A. § 44-14-162(b) Does Not Give Plaintiffs Standing to Challenge Defects Within the Assignment[5]</u>

Plaintiffs further theorize that O.C.G.A. § 44-14-162(b) vests them with standing to challenge the defects in the Assignment because, given that the Assignment was not eligible for recording, the Assignment did not comply with O.C.G.A. § 44-14-162(b). O.C.G.A. § 44-14-162(b) provides that:

> (b) The security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be *filed* prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located.

O.C.G.A. § 44-14-162(b).  In support of Plaintiffs' theory, Plaintiffs rely on statutory authority and case law which provides that in order for a deed to secure debt to be admitted for recording, it must be properly attested, and that when a deed is not duly filed, recorded, and indexed on appropriate land records, it is not constructive notice to bona fide purchasers for value.  <u>See, e.g.</u>, O.C.G.A. § 44-14-33; O.C.G.A. § 44-14-39; O.C.G.A. § 44-14-61; <u>Hopkins v. Va. Highland Assocs., L.P.</u>, 247 Ga. App. 243, 246-47 (2000) (noting that a deed not properly executed is not properly recordable and does not give constructive notice to subsequent bona fide purchasers).

---

[5]  Plaintiffs do not argue the foreclosure was wrongful in violation of O.C.G.A. § 44-14-162(b) in their SAC.  Plaintiffs, for the first time, raise a violation of O.C.G.A. § 44-14-162(b) as a basis for their wrongful foreclosure claim in their Proposed Third Amended Complaint, which this Court has not allowed Plaintiffs to file.  This Court, therefore, only addresses the possible violation of O.C.G.A. § 44-14-162(b) in the context of whether it provides Plaintiffs' a basis for standing to challenge defects within the Assignment.

32

This Court disagrees with Plaintiffs' contention that O.C.G.A. § 44-14-162(b) gives them a basis to challenge a defect within the Assignment and with Plaintiffs' conclusion that BOA was not compliant with O.C.G.A. § 44-14-162(b). The foreclosure statutes are intended to provide limited consumer protection, while preserving in large measure the traditional freedom of the contracting parties to negotiate the terms of their arrangement. <u>You</u>, 293 Ga. at 69–70.  The limited statutory protections, codified in O.C.G.A. §§ 44-14-160 through 44-14-162.4, consist primarily of rules governing the manner and content of notice that must be given to a debtor in default prior to conducting a foreclosure sale. <u>You</u>, 293 Ga. at 70, 72 (noting that in 2008, O.C.G.A. §§ 44-14-162 and 44-14-162.2 were amended to simply provide more transparency in the process to assist borrowers facing foreclosure) (citing Austin Hall, Note, Peach Sheets, Property, 25 Ga. St. U. L. Rev. 265, 266–270 (2008)).  Thus, the aim of O.C.G.A. § 44-14-160(b), when read in conjunction with other parts of the foreclosure statutes, appears to be that the process be transparent, that the debtors are provided notice in advance of the foreclosure sale of the parties who are exercising the provisions within the Security Deed allowing for the foreclosure sale, and that the entity conducting the foreclosure sale is the current holder of the deed as reflected by public records. O.C.G.A. §§ 44-14-162(b), 44-14-162.2; <u>Duke Galish, LLC v. SouthCrest Bank</u>, 314 Ga. App. 801, 802 (2012).  This Court, however, can find no support, either in case law or legislative history, for the notion that O.C.G.A. § 44-14-162(b) includes a requirement that the Assignment be in a condition that it provides constructive notice

to bona fide purchasers for value.  In fact, O.C.G.A. § 44-14-162(b) appears to require less in that it simply provides that the security instrument or assignment be "filed" and it vests the secured creditor with title to the security instrument as reflected in the public records.  O.C.G.A. § 44-14-162(b); <u>Duke Galish</u>, 314 Ga. App. at 802.  Here, as between the parties to the Assignment, the Assignment did vest BAC with the interests in the Haynes' Security Deed.  <u>Bramblet</u>, 252 Ga. at 22; <u>Moody</u>, 241 Ga. at 286 ("The fact that a deed is not recorded, and may not be recordable for lack of attestation does not render it invalid, nor inadmissible in evidence if the proper foundation is laid"); <u>Budget Charge Accounts</u>, 213 Ga. at 18 ("The allegation that the deed was improperly witnessed by an agent of the lender as notary public is insufficient to void the deed to secure debt, since a deed without attestation conveys the title as against the grantor and his heirs."); <u>Hooten</u>, 224 Ga. App. at 582 ("Despite a statutory requirement that the signature of the maker of a deed must be attested by two witnesses, the requirement relates only to the recordability of the instrument, and a deed may be valid between the parties without attestation."); <u>Duncan</u>, 172 Ga. App. at 752.  Moreover, BAC's interest was effective against Plaintiffs as Plaintiffs have no standing to challenge the Assignment. <u>Montgomery</u>, 321 Ga. App. at 345 (rejecting debtor's challenge to the assignment of security deed because debtor was not a party to the assignment and therefore lacked the standing to contest its validity).  In this case, the Assignment to BAC was filed on August 30, 2010, which was prior to the date of the foreclosure sale on September 7, 2010.  (J. Haynes Dep. 25-26; BOA DSMF ¶ 16; Doc. 100-2).

AO 72A
(Rev.8/82)

The fact that the Assignment had not been recorded prior to BAC's advertisement of the sale is of no consequence.  O.C.G.A. § 44-14-162(b) only requires that the Assignment be filed prior to the foreclosure sale itself.  O.C.G.A. § 44-14-162(b) does not require that the Assignment be recorded prior to advertisement.  <u>See</u> O.C.G.A. § 44-14-162(b) (providing that "the security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the *time of sale*") (emphasis added); <u>see also</u> <u>Nye v. HSBC Bank USA, N.A.</u>, No. 1:12-CV-00770-RWS, 2012 WL 5613448, at *2 (N.D. Ga. Nov. 14, 2012) (concluding that the fact that defendant was not assignee of record during the period of advertisement of the foreclosure sale was of no consequence); <u>L&K Enters., LLC v. City Nat'l Bank</u>, 755 S.E.2d 270, 271-72 (Ga. Ct. App. 2014) (concluding that Georgia law does not include a timing requirement for filing the assignment other than prior to the sale and that foreclosing entity met the requirements of statute by filing the assignment with the clerk prior to the earliest possible sale time).

3.   <u>O.C.G.A. § 44-14-162.2(a) Did Not Require the Notice of Foreclosure to Include the Identity of the Secured Creditor</u>

While not specifically addressed by Defendants, to the extent that Plaintiffs are arguing the Notice of Foreclosure violated O.C.G.A. § 44-14-162.2(a) because the notice did not identify Fannie Mae as owner of the loan, Plaintiffs' claim fails.  (SAC ¶ 32).  As noted in the discussion of Plaintiffs' Motion to Amend above, Plaintiffs' theory that the foreclosure was wrongful because BAC did not notify Plaintiffs in the Notice of Foreclosure that Fannie Mae allegedly owned the loan also fails as a matter

of law.  Under Georgia law, a notice of foreclosure "shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 44–14–162.2(a).  "[T]he statute does not require that notice letters must identify the security creditor." Carr, 534 F. App'x at 881; You, 293 Ga. at 74-75.  "The only entity that [has] to be identified in the Notice [is] the one with the full authority to negotiate, amend, or modify the terms of the loan, and that could be the deed holder, note holder, attorney, or servicing agent." Harris v. Chase Home Fin., LLC, 524 F. App'x 590, 593 (11th Cir. 2013); You, 293 Ga. at 74-75.  Thus, O.C.G.A. § 44-14-162.2 does not require that the secured creditor be identified in the Notice of Sale, therefore, the failure to do so does not provide a basis for a wrongful foreclosure claim. You v. JPMorgan Chase Bank, N.A., No. 1:12-CV-202-JEC-AJB, 2014 WL 793325, at *1 (N.D. Ga. Feb. 25, 2014); You, 293 Ga. at 74-75; Harris v. CitiMortgage, Inc., No. 1:14–CV–271–TWT, 2014 WL 1767717, at *3 (N.D. Ga. May 2, 2014); Hill v. JPMorgan Chase Bank, Nat'l Ass'n, No. 1:13-CV-1639-TWT, 2014 WL 1232147, at *2 (N.D. Ga. Mar. 24, 2014) (dismissing claim that defendant wrongfully foreclosed when it failed to identify the secured creditor in the Notice of Sale and refusing to recognize claim that foreclosing entity lacked the authority to negotiate, amend, or modify the terms of the loan because claim was not asserted in complaint).  Because this Court is recommending dismissal of Plaintiffs' claim sua sponte, Plaintiff must be given notice and an opportunity to respond.  See, e.g., Shrivers v. Int'l Bhd of Elec.

Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008).  To the extent that Plaintiffs dispute that the aforementioned claim should be dismissed, Plaintiffs may include the basis for their opposition in an objection to this Court's Report and Recommendation.  Latimore v. Gateway Retrieval, LLC, 1:12-CV-00286-TWT-JFK, 2013 WL 791258, at *10 n.7 (N.D. Ga. Feb. 1, 2013).  As a result of Plaintiffs failure to present any viable legal theory supporting their wrongful foreclosure claims asserted within their SAC, summary judgment should be **GRANTED** as to Plaintiffs' wrongful foreclosure claims.

### C.    **Plaintiffs' FDCPA Claims**

In Count II of Plaintiffs' SAC, Plaintiffs argue Defendants violated Section 1692f(6)(A) of the FDCPA because they threatened and took action to dispossess Plaintiffs from their property even though BAC did not have a valid interest in Plaintiffs' property due to the alleged defects in the Assignment.  (SAC ¶¶ 35-36). Specifically, Plaintiffs contend that BAC violated the FDCPA when McCalla Raymer sent Plaintiff Joan Haynes a Notice of Foreclosure Sale on July 24, 2010, and conducted the foreclosure sale on September 7, 2010.  (SAC ¶ 36).

### 1.    BOA

BOA argues summary judgment should be granted as to Plaintiffs' FDCPA claims because BOA cannot be liable for FDCPA violations by McCalla Raymer and because BOA's predecessor in interest, BAC, was not a debt collector as defined by the FDCPA. In support, BOA contends that mortgage originators, lenders, and servicers are not debt

collectors and are not subject to the FDCPA when the debt was not in default at the time the debt was obtained by them. Plaintiffs do not respond to BOA's argument and do not seek summary judgment against BOA as to the FDCPA in their own Cross-Motion for Summary Judgment. (See Pl.'s Br., Doc. 86).

Plaintiffs fail to raise a genuine disputed issue of material fact as to whether BOA's predecessor in interest was a debt collector. Section 1692a(6) of the Act generally defines the term "debt collector" as "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Courts have found that this definition excludes loan servicers because 15 U.S.C. § 1692a(6)(F) provides that the term debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985); Oppong v. First Union Mortg. Corp., 215 F. App'x 114, 118-19 (3d Cir. 2007); Gardner v. TBO Capital LLC, No. 1:13-CV-2491-WSD, 2013 WL 6271897, at *6 (N.D. Ga. Dec. 4, 2013); Stroman v. Bank of Am. Corp., No. 1:10-CV-4080-AT, 2012 WL 1123730, at *6 (N.D. Ga. Mar. 30, 2012). Conversely, when the loan is in default at the time the loan servicer begins servicing the loan, courts have concluded that a loan servicer may be a debt collector. Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 366 (6th Cir. 2012); Allen v. Bank of Am. Corp., No. CCB-

38

11-33, 2011 WL 3654451, at *7 n.9 (D. Md. Aug. 18, 2011) (concluding that because BAC serviced loans that were in default at the time they began servicing them, BAC was a debt collector under the FDCPA); <u>Weigel v. BAC Home Loans Servicing, LP</u>, No. 09-CV-02546-WDM-KMT, 2011 WL 1135319, at *4 (D. Colo. Mar. 29, 2011) (same).

In this case, Plaintiffs have not presented any facts supporting the conclusion that the principal purpose of BAC's business was to collect debts or that BAC "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Additionally, Plaintiffs fail to present any facts tending to show that their loan was in default when BAC began servicing their loan.  Accordingly, Plaintiffs do not raise a genuine issue of disputed fact with respect to whether BAC was a debt collector pursuant to 15 U.S.C. § 1692a(6).

Additionally, while Plaintiffs' FDCPA claim is brought pursuant to Section 1692f(6), and the Act specifies that for purposes of Section 1692f(6) of the FDCPA, the term debt collector "also includes any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the enforcement of security interests," Plaintiffs do not present any facts tending to show that the principal purpose of BAC's business is the enforcement of security interests.  15 U.S.C. § 1692a(6).  Accordingly, summary judgment should be **GRANTED** as to Plaintiffs' FDCPA claim against BAC.

AO 72A
(Rev.8/82)

2.    McCalla Raymer

McCalla Raymer argues it is entitled to summary judgment as to Plaintiffs' claims pursuant to Section 1692f(6)(A) because given that it sent its last Notice of Foreclosure Sale to Plaintiffs on July 24, 2010, and Plaintiffs' action was filed more than one year later, Plaintiffs' FDCPA claims are barred by the statute of limitations.   McCalla Raymer further contends that to the extent that Plaintiffs' FDCPA claims are predicated on defects within the Assignment, Plaintiffs' claims fail because the Assignment was valid and recorded on August 30, 2010, prior to the foreclosure sale, and Plaintiffs lack authority to challenge the sufficiency of the Assignment.

First, this Court finds that Plaintiffs' claim that the Notice of Foreclosure itself violated the FDCPA is time-barred.  The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from, among other things, taking or threatening to take "any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A); Muhammad v. JPMorgan Chase, Bank, NA, No. 13-13851, 2014 WL 2210673, at *2 (11th Cir. May 29, 2014).  The limitations period for Section 1692f(6) claims are one year from the date on which the alleged violation occurs, and when the claim is predicated on a letter the debt collector sent to the debtors, the limitations period begins to run on the date the letter is sent.  15 U.S.C. § 1692k(d); Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995).  In this case, McCalla Raymer sent the Notice of Foreclosure to Plaintiffs no later July or August of 2010

40

because Plaintiffs admit to having received it by that time.  (McCalla Raymer's Statement of Undisputed Material Facts ¶ 6; Pl.'s Resp. to McCalla Raymer's Statement of Undisputed Facts ¶ 6).  Plaintiffs filed the instant lawsuit on September 6, 2011.  (Doc. 1-1).  Accordingly, more than one year passed between the date of the violation and the date Plaintiffs' lawsuit was filed, therefore, Plaintiffs' claim is time-barred.  See, e.g., Abdullahi v. Bank of Am., N.A., No. 2:12-CV-0162-RWS, 2013 WL 1137022, at *9 (N.D. Ga. Mar. 15, 2013) (holding that plaintiff's Section 1692f(6) claim predicated on defective Notices of Foreclosure was time-barred because it was filed more than one year after Notices of Foreclosure were sent), aff'd 549 F. App'x 864 (11th Cir. 2013).

As for Plaintiffs' remaining claim, that the foreclosure sale itself violated the FDCPA, as noted above, Plaintiffs fail to show that BAC had no present right to enforce provisions of the security instrument against Plaintiffs because the Assignment was effective as between MERS and BAC and Plaintiffs had no standing to challenge the Assignment between third parties.  Alexander v. Bank of Am., N.A., No. 2:13-CV-00067-RWS, 2014 WL 106349, at *3 (N.D. Ga. Jan. 10, 2014) (finding that debtors failed to state a claim that BOA violated Section 1692f(6) even if Security Deed was not assigned in compliance with pooling and servicing agreement because plaintiff had no standing to dispute the validity of the assignment of the security deed); Gardner, 2013 WL 6271897, at *7 & n.3 (explaining that plaintiffs could not establish FDCPA claim that Defendants' "statements demanding possession of the property on behalf of an unidentified and unknown entity" were misleading to the extent the claim was

41

predicated on invalid assignments because plaintiffs were not parties to the assignments and plaintiffs lacked standing to challenge them).  Accordingly, summary judgment should be **GRANTED** as to Plaintiffs' FDCPA claim against McCalla Raymer.

### PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

In Plaintiffs' Cross-Motion for Summary Judgment (Doc. 86), Plaintiffs argue summary judgment should be granted in their favor on the same claims adjudicated in Defendants' Motions for Summary Judgment.  For the reasons explained above, however, this Court has already concluded that no genuine issues of disputed material fact preclude summary judgment in Defendants' favor.  Plaintiffs also seek summary judgment on new claims asserted for the first time in their Proposed Third Amended Complaint, but this Court has denied Plaintiffs' request to amend their Complaint. Accordingly, Plaintiffs' Motion for Summary Judgment should be **DENIED** (Doc. 86).

### CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that Defendants' Motions for Summary Judgment be **GRANTED** (Docs. 78, 80) and Plaintiffs' Motion for Summary Judgment be **DENIED** (Doc. 86).  Plaintiffs' First Motion to Amend Complaint and Add Party is **DENIED** (Doc. 85).  Because this Court is recommending dismissal of Plaintiffs' claim that the Notice of Foreclosure violated O.C.G.A. § 44-14-162.2(a) (SAC ¶ 32) sua sponte, Plaintiffs may include any basis for their opposition to dismissal in their objection to this Court's Report and Recommendation, so that the District Court may consider dismissal in connection with its consideration of this Report

AO 72A
(Rev.8/82)

and Recommendation.  As this is a final Report and Recommendation and there are no other matters pending before this Court, the Clerk is directed to terminate the reference to the undersigned.

**SO ORDERED, REPORTED AND RECOMMENDED** this ___3___ day of July, 2014.


/s/ Linda T. Walker_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

43